PENFOLD v. CHARLEVOIX SAVINGS BANK.

1. BANKS—FINANCIAL STANDING—REPORT OF DIRECTORS — FRAUD
   INDUCING SALE OF STOCK—EVIDENCE—SUFFICIENCY.
   Alleged fraud of bank directors, consisting in false reports of the
   financial condition of the bank, inducing a sale of stock of said
   bank, is not proved where it appears that the report of the di-
   rectors to the commissioner of banking, in order to make the
   statement balance, contained such items as "unadjusted
   errors in loans," "unadjusted errors in stocks," "unadjusted
   errors in cash paid," "unadjusted errors in real estate," etc.,
   and that the commissioner of banking mistakenly treated
   such items as assets, and reported the bank sound, when in
   fact the statement of the directors showed that the bank's
   capital was impaired.

2. SAME—REFUSAL TO TRANSFER SHARES.
   Unauthorized action of the directors of a bank in withholding
   assent to the transfer of stock to a purchaser thereof, prevent-
   ing the purchaser from reselling the stock before the insol-
   vency of the bank became known is not in itself evidence of
   fraud on the purchaser.

Error to Charlevoix; Davis, J., presiding. Submitted
April 5, 1905. (Docket No. 11.) Decided May 12, 1905.

Case by Jonathan Penfold against the Charlevoix Sav-
ings Bank and others for fraudulent representations in-
ducing purchase of stock. There was judgment for de-
fendants on a verdict directed by the court, and plaintiff
brings error. Affirmed.

*R. W. Kane* and *Thomas Smurthwaite*, for appellant.

*Lisle Shanahan* (*Dallas Boudeman*, of counsel), for
appellee.

MONTGOMERY, J. The plaintiff began suit against the
defendants by declaration in trespass on the case, alleging

that the Charlevoix Savings Bank, for a number of years had been employed in the banking business, and defendants Nicholls and Buttars, during the time complained of in the declaration, were directors of such bank, and on April 25, 1893, plaintiff purchased for $3,000 from Luther E. Allen and Mary E. Allen 30 shares of the stock of said bank, of the par value of $3,000, and on such purchase obtained an assignment of certificates of such shares of stock, which certificates at the time of such purchase stood in the names of the two persons above named.

The declaration then proceeds to say: That the defendants, with the intent to deceive the public, and especially the plaintiff and others who might become purchasers of the capital stock of said bank, being required by law to make reports to the commissioner of banking of the State showing the true financial condition of the bank, did, before plaintiff's purchase, make and file with the commissioner of banking reports "which were in fact incorrect and misleading, and which were then well known to the defendants to be incorrect and misleading, in that according to said reports the said bank was solvent, and had sufficient assets to pay all its liabilities, without any impairment of its capital stock, and that the said bank could pay in full all its liabilities and have remaining its entire capital stock and by reason of said reports said Charlevoix Savings Bank came to be known as a solvent institution, with unimpaired capital," etc.   That plaintiff, in reliance upon said reports, and believing them to be true, purchased, received, and accepted said stock, etc., when in truth and in fact said stock was not worth its face or par value, and the capital of said bank had become so far impaired that its stock was worth but about 10 per cent. of its face value.   That, since said purchase by plaintiff, defendants have continued to make like reports to said commissioner of banking; said reports representing said bank to be in a solvent condition; the last of which reports being made in 1898, when it was shown that the bank was in a solvent condition, able to pay its debts, and have then

remaining all of its capital and a surplus. That since said purchase the plaintiff caused such certificates of stock to be presented to defendant for surrender, and requested a transfer of said stock on the books of the bank, and that new certificates be issued to plaintiff, and this was refused, whereby plaintiff was deprived of the said shares of stock. That, plaintiff having opportunity to sell said stock, the intended purchaser inquired of the defendants about said stock, and they denied that the plaintiff owned or held any stock in said bank, whereby plaintiff was deprived of the opportunity to sell the same. That defendants have denied that plaintiff was a stockholder in said bank, and gave him no notice of the meetings of its stockholders. That defendants, owning and controlling a majority of the stock of the bank, on January 30, 1899, without any chance for plaintiff to vote on the question, and unknown to him, undertook to place said bank in liquidation, thereby destroying its business and franchises, etc. The defendants formed another bank, and advertised the same as the successor of the Charlevoix Savings Bank, and said defendants, and others under the name of Nicholls, Buttars & Co. are now doing the banking business formerly done by the said Charlevoix Savings Bank.

With respect to quite a number of these allegations no proof was offered or pretended to be offered. It will be seen by the foregoing that the pretended cause of action is based entirely upon a fraud alleged to have been committed by the defendants against the plaintiff. The action is in tort, as claimed by plaintiff in the declaration and in their brief. After all the testimony had been given on the part of the plaintiff, the court directed the jury to return a verdict for the defendants.

The evidence as to fraudulent representations by defendants consisted of the reports made by defendants' officers to the State commissioner of banking, accompanied by the report of the commissioner based thereon, accompanied by testimony that the commissioner's report came to plaintiff's notice before the purchase of the stock by him

and induced the purchase. We do not pass upon the abstract question suggested by the case, as to whether one who relies in the purchase of bank stock upon the commissioner's published statement of the condition of a bank, summarized from the report of the bank's officers, may, where such summarized statement accords with the statements of the bank's officers, and where the statement is shown to be an untruthful representation of the bank's condition, have an action on the case as for a fraudulent representation. This is not such a case, as the circuit judge rightly ruled. At the outset of plaintiff's case, it is apparent not only that the report of the banking commissioner was not an accurate summary of the bank officers' statements, but that, had the real report of such officers been correctly set out, no one at all familiar with such statements could have failed to discover that the capital stock of this bank was impaired. Among the items reported in order to make the debit and credit side of the statement balance were: "Unadjusted errors in loans and discounts;" "Unadjusted errors in stocks, bonds and mortgages;" "Unadjusted errors in cash paid to July, 1890;" "Unadjusted errors in cash, $70.01;" "Unadjusted errors in real estate;" "Expense, bank suspense." These items aggregated about $11,000, and, unless these items appeared to be *assets*, the statement, on its face, showed that the bank's capital was impaired nearly 25 per cent. It is absurd to assume that, had this exact statement been presented to plaintiff, he would have been misled into the belief that "errors" were as good as cash. In fact, it is clear from his testimony, that, had he known that these items of errors appeared in the statement of the bank officers, he would not have taken the stock. Through some unaccountable oversight, these items appear to have been treated by the commissioner of banking in his report as real estate. The defendants were not responsible for this, and, eliminating this, we discover no tangible evidence of fraud.

As to the claim of damage to plaintiff through defendants' refusal to transfer the stock on the books of the bank, the condition of the record is unsatisfactory. As before stated, the declaration contains but a single count, and it appears that defendants asked that plaintiff be required to elect upon what cause of action he would rest his case, and that his counsel stated in response to the court that " the declaration was substantially one of a single count, and that these various acts were set up as a series of acts constituting as a whole the cause of injury to the plaintiff." Viewed in this light, we are not able to see that a recovery should have been permitted to the plaintiff for a technical breach of duty in denying plaintiff's right to have the transfer of this stock entered upon the books of the bank. It is entirely clear that no fraudulent purpose is shown by defendants' refusal to permit such transfer. There is nothing to indicate bad faith, and about the most that can be said is that plaintiff was, by this refusal of the defendants to act, prevented from recouping his loss by putting off stock having no market value upon others who might have been deceived by the same misleading report of the commissioner of banking, upon which he acted, and for which defendants were not responsible. Even though defendants were acting under a mistaken power, no fraud was perpetrated in withholding assent to the transfer of stock. In fact, it would seem they were acting under the directions of the commissioner of banking. An assessment had been made upon the stock. The refusal to transfer the stock on the bank's books challenged the attention of the prospective purchaser to this assessment, but did not prevent a transfer between the parties. Under these circumstances, the plaintiff suffered no substantial injury, unless it resulted from the facts being known, and of this the plaintiff ought not to complain.

No prejudicial error appears. Judgment affirmed.

CARPENTER, MCALVAY, GRANT, and HOOKER, JJ., concurred.